UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION


HALDRUP USA CORP.          )
                                 )
        Plaintiff,        )
                                 )
     -vs-              )        CIVIL NO:  1:15-CV-136
                                 )
KINCAID EQUIPMENT      )
MANUFACTURING, INC. and  )
EMPRISE BANK,         )
                                 )
        Defendants.    )


**MEMORANDUM IN OPPOSITION TO MOTION TO
DISMISS PLAINTIFF'S AMENDED COMPLAINT OR
IN THE ALTERNATIVE, FOR VENUE TRANSER**

In Defendant's Motion to Dismiss Plaintiff's Amended Complaint or In the Alternative for Venue Transfer, Defendant, Kincaid Equipment Manufacturing, Inc. ("Kincaid"), seeks dismissal of the Amended complaint filed by Plaintiff, Haldrup USA Corp. ("Haldrup"), on the grounds that this Court lacks personal jurisdiction over Kincaid, that venue is not proper in this Court, and that, in the alternative, this case should be transferred to the District of Kansas pursuant to 28 U.S.C. §1404(a).  However, each of these arguments must fail.

First, Kincaid is subject to personal jurisdiction under the doctrine of specific jurisdiction, as it has sufficient minimum contacts with the State of Indiana, and Haldrup's claims arise out of or are related to those contacts.  Second, venue is proper in this Court pursuant to 28 U.S.C. §1391 in that Kincaid is deemed to reside in this judicial district because as it is subject to personal jurisdiction in this district.  Finally, Kincaid has wholly failed to demonstrate that this case should be transferred pursuant to 28 U.S.C. §1404(a) as Kincaid has failed to meet its

burden of proof that the District of Kansas is clearly more convenient than the Northern District of Indiana. Accordingly, Kincaid's Motion to Dismiss, or in the Alternative Motion to Transfer Venue, should be denied.

## I. FACTUAL BACKGROUND

In its Amended Complaint, Haldrup alleges that Kincaid and Inotec Engineering GmbH ("Inotec") entered into a Memorandum of Understanding in May 2012 whereby Kincaid agreed to act as the United States importer and distributor of agricultural implements manufactured and sold by Inotec. (Amended Complaint, ¶8, Exhibit A). (Doc. 16). Haldrup, an Indiana corporation with a principal place of business in Wells County, Indiana, is the successor in interest and assignee of all of Inotec's rights with respect to Inotec's agreements with Kincaid. (Amended Complaint, ¶1, ¶14). In its Amended Complaint, Haldrup alleges that, with respect to the agricultural implements manufactured and sold by Inotec to Kincaid, Kincaid has, without Inotec's prior authorization, made alterations or modifications to those agricultural implements for sales to customers in the United States. (Amended Complaint, ¶16). The unauthorized modifications and alterations of the agricultural implements manufactured and sold by Inotec to Kincaid have resulted in problems for the ultimate purchaser of the agricultural implements. (Amended Complaint, ¶17). Kincaid's actions in performing unauthorized modifications and alterations of agricultural implements manufactured by Inotec and Haldrup have caused and continue to cause, damage to Haldrup's reputation among purchasers of such implements in the United States market. (Amended Complaint, ¶18). It is upon that factual basis that Haldrup seeks injunctive relief in Count IV of its Amended Complaint. (Amended Complaint, ¶40-¶41).

Kincaid has sold Inotec and/or Haldrup parts or implements to three different entities in the State of Indiana. (Defendant Kincaid Manufacturing Equipment Inc.'s Responses to

Plaintiff's First Set of Jurisdictional Interrogatories and Request for Production of Documents to Defendant, Kincaid Manufacturing Equipment, Inc., Interrogatory No. 1)(attached as Exhibits "A" and "B"). Kincaid sold a Haldrup Head, 7-Row Distributor to ABG Ag Services in Sheridan, Indiana. (Kincaid Answers to Interrogatories, Interrogatory No. 1). Kincaid sold a Thresher & Cleaner, Haldrup LT-15 to Dow AgroSciences in West Lafayette, Indiana. (Kincaid Answers to Interrogatories, Interrogatory No.1 ). Kincaid sold two different Haldrup implements to Purdue University/Elizabeth Rausch Purdue Agronomy Farm in West Lafayette, Indiana. ("Purdue"). (Kincaid Answers to Interrogatories, Interrogatory No. 1). Kincaid sold a KEM Haldrup 6-Row Planter and a KEM Haldrup 4-Row Drill to Purdue as a part of those transactions. (Kincaid Answers to Interrogatories, Interrogatory No. 1). Kincaid admits that it modified that Haldrup equipment before its sale to Purdue. (Kincaid Answers to Interrogatories, Interrogatory No. 1).

On April 3, 2015, counsel for Kincaid sent correspondence to Haldrup citing problems with agricultural implements sold by Kincaid to Purdue as a reason why Kincaid refused to pay Haldrup for the goods which are the subject of Counts I and II of Haldrup's Amended Complaint. (Exhibit "A" to Haldrup Motion for Extension of Time). (Doc. 13-1). In addition to problems with Haldrup equipment sold by Kincaid to Purdue, counsel for Kincaid also cites in its letter to problems with Haldrup's products sold to Dow-Mycogen, Kansas State University, Monsanto, Bayer Crop Science, University of Arkansas, MFA, Inc. and the University of Manitoba. (*Id.*)

In addition to those sales in Indiana, in 2013, Kincaid conducted a demonstration of a C85 combine manufactured by Haldrup for Tech Services, Inc. ("Tech Services") in Bluffton, Indiana. (Affidavit of Mike Mossburg, ¶3, ¶6) (attached as Exhibit "C"). Kincaid brought the

combine to Indiana for demonstration in May, 2013 (Mossburg Affidavit, ¶7). At the time Mike Mossburg, President of Tech Services, first viewed the combine, it did not appear to be field ready; it did not appear to have been cleaned since its last use, and it still had crops in it. (Mossburg Affidavit, ¶8). Tech Services attempted to operate the Haldrup combine provided by Kincaid in four different locations, two in Indiana and two in Illinois. (Mossburg Affidavit, ¶9). The Kincaid technicians could not get the combine to operate in the first two fields. (Mossburg Affidavit, ¶10). Ultimately, the combine worked on the last field on which it was tested. (Mossburg Affidavit, ¶11). It was clear to Mossburg that the Haldrup combine had received no service and only minimal maintenance before the demonstration by Kincaid for Tech Services. (Mossburg Affidavit, ¶12). The Kincaid technicians could not get the Haldrup combine to work, and it was clear to Mossburg that the Kincaid technicians lacked the understanding and ability to operate or repair the Haldrup combine. (Mossburg Affidavit, ¶13). The Kincaid representatives told Mossburg that, with respect to the Haldrup combine, they had been having the same problem for a while; that it would work and then quit. (Mossburg Affidavit, ¶15).

Ultimately, the combine was brought back to Bluffton, Indiana for inspection and to determine the cause of the electrical problems. (Mossburg Affidavit, ¶16). Kincaid left the Haldrup combine in Bluffton, Indiana for more than a month. (Mossburg Affidavit, ¶17). Following the "demonstration", Mossburg had little confidence the combine would work for Tech Services. (Mossburg Affidavit, ¶18).

In December, 2013 Mossburg met with Kincaid representatives at the Chicago Trade Show where Kincaid was still demonstrating Haldrup products. (Mossburg Affidavit, ¶19). At that time, Andrew Blubaugh of Kincaid invited Mossburg to travel to Europe to see the Haldrup operation. (Mossburg Affidavit, ¶20). Mossburg was to travel with Kincaid representatives

who were going to the Haldrup facility for training. (Mossburg Affidavit, ¶21).   Kincaid organized the trip and purchased Mossburg's plane ticket to Europe to visit the Haldrup facility. (Mossburg Affidavit, ¶22).   After his visit to the Haldrup facility, Mossburg believed that it was clear that Kincaid technicians would have difficulty learning the Haldrup equipment. (Mossburg Affidavit, ¶23).   Mossburg had a complete lack of confidence in Kincaid as a distributor of Haldrup's products, as Kincaid's representatives did not appear to understand, nor have the ability to repair, the equipment.   In addition, Kincaid was also interested in selling products other than Haldrup's products.   (Mossburg Affidavit, ¶24).

## II.  ARGUMENT

### A.  <u>Kincaid is Subject to Personal Jurisdiction in Indiana</u>.

Whenever a defendant moves to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of showing that personal jurisdiction over the defendant exists.  *Claus v. Mise*, 317 F.3d. 725, 727 (7th Cir. 2003).  When, as here, the Court is to rule on the motion to dismiss based on the submission of written materials, without the benefit of an evidentiary hearing, the plaintiff need only make out a *prima facie* case of personal jurisdiction.  *Purdue Research Foundation v. Sanofi-Synthelabo, SA,* 338 F.3d. 773, 782 (7th Cir. 2003).  In evaluating whether the *prima facie* standard has been satisfied, the plaintiff is entitled to the resolution of all factual disputes in its favor.  *Id*.

A federal district court's personal jurisdiction over a defendant is established in a diversity jurisdiction case only so long as the defendant is subject to the jurisdiction of a court of general jurisdiction in the state where the district is located.  *Northern Grain Marketing, LLC v. Greving*, 743 F.3d. 487, 491 (7th Cir. 2014).  Indiana Trial Rule 4.4(A) serves as Indiana's long arm provision and expands personal jurisdiction to the full extent of that permitted by the Due

Process Clause.  *O'Neal v. Bumbo International Trust*, 16 F.Supp.3d. 952, 956 (S.D. Ind. 2014); *LinkAmerica Corp. v. Cox,* 857 N.E.2d. 961, 965 (Ind. 2006).  Thus, the statutory question merges with the constitutional one if Indiana constitutionally may exercise personal jurisdiction over a defendant, its long arm statute will enable it to do so.  *Northern Grain, supra* at 492.

Personal jurisdiction over a non-resident defendant meets the standard of Due Process when the defendant has established minimum contacts within the State such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.  *Tamburo v. Dworkin*, 601 F.3d. 693, 700 (7th Cir. 2010) (quoting, *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90[h] L.E.2d. 95 (1945)).  Personal jurisdiction may be either general or specific.  General jurisdiction over a defendant exists where the defendant has continuous and systematic business contacts with the State, even when those contacts do not relate to the action at issue.  *Id*. (citing, *Helicopteros Nacionales de Columbia SA v. Hall*, 466 U.S. 408, 416, 104 S.Ct. 1868, 80 L.E.2d. 404 (1984)).  Specific jurisdiction, on the other hand, exists for controversies that arise out of or are related to the defendant's forum contacts.  *Hyatt Intl. Corp. v. Coco*, 302 F.3d. 707, 713 (7th Cir. 2002); *Steel Warehouse of Wisconsin, Inc. v. Leach*, 154 F.3d. 712, 714 (7th Cir. 1998).

The Seventh Circuit instructs that specific jurisdiction is appropriate where (1) the defendant has purposely directed its activities to the forum state or purposely availed itself of the privilege of conducting business in the forum state; (2) the alleged injury arises out of or relates to the defendant's forum related activities; and (3) the exercise of specific jurisdiction comports with traditional notions of fair play and substantial justice.  *Felland v. Clifton,* 682 F.3d. 665, 673 (7th Cir. 2012); *1st Source Bank v. Village of Stevensville*, 905 F.Supp.2d. 898, 905 (N.D. Ind. 2012).  In this case, Kincaid has purposely directed activities at Indiana and purposely availed

itself of the privilege of conducting business in Indiana; the injury for which Haldrup seeks recovery in this case is related to and arises out of Kincaid's Indiana related activities; and the exercise of specific jurisdiction over Kincaid in this case does not offend traditional notions of fair play and substantial justice. Accordingly, Kincaid's Motion to Dismiss for Lack of Personal Jurisdiction should be denied.

### 1. **Kincaid's Conduct was Expressly Aimed at Indiana.**

To establish a defendant's conduct was aimed at the forum state, a plaintiff must show the defendant's suit related conduct creates a substantial connection with the forum state. *Walden v. Fiore*, 134 S.Ct. 1115, 1121, 188 L.E.2d. 12 (2014). The Court in *Walden* emphasized that the plaintiff cannot be the only link between the defendant and the forum; it is the defendant's conduct that must form the necessary connection with the forum. *Id*. at 1122. While the purposeful direction inquiry can appear in different guises, in all cases, the point of it is to ensure that an out-of-state defendant is not bound to appear to account for merely random, fortuitous, or attenuated contacts with the forum state. *Tamburo, supra* at 702.

In this case, Kincaid purposely availed itself of the privilege of conducting business in Indiana when it made sales of Haldrup's implements to Purdue, Dow Agrosciences and ABG Ag Services, and when it attempted to make a sale of a Haldrup combine to Tech Services by conducting a demonstration of that implement in the State of Indiana and then flying Mossburg to Germany in an attempt to make the sale. Federal Courts in Indiana have recognized that where a seller of products uses a distribution network for its products with the expectation that they will be purchased by consumers in Indiana, it has purposely availed itself of conducting business in Indiana. *O'Neal, supra* at 958, citing *Giotis v. The Apollo of the Ozarks, Inc.*, 800 F.2d. 660, 667 (7th Cir. 1986). Indeed, Indiana federal courts have held that where an internet

company holds itself as open to do business in the forum state and actually does sell products to residents in the forum, specific jurisdiction is proper. *Best Chair, Inc. v. Factory Direct Wholesale, LLC,* 2015 WL 4641722, *5 (S.D. Ind. 2015). Accordingly, in this case, when Kincaid made sales of Haldrup's products to customers in Indiana, and when it attempted to make sales of Haldrup's products to Tech Services by demonstrating the product in the State of Indiana, Kincaid purposely availed itself of the privilege of doing business in Indiana, and, therefore, is subject to personal jurisdiction in this Court.

## 2. Haldrup's Claims Arise Out Of And/Or Are Related to Kincaid's Contacts with Indiana.

If a defendant's conduct is purposely directed to a forum state, the plaintiff must also demonstrate that its injury arises out of or relates to the actions of the defendant. *1st Source Bank, supra* at 905; *Felland, supra* at 676. While the Supreme Court has not elaborated on the details of this requirement, Circuit courts have been split on how close the causal connection a defendant's action must be to the plaintiff's injury. *1st Source Bank, supra.*

In this case, in its Amended Complaint, Haldrup alleges that its injuries arise directly out of Kincaid's contacts with the State of Indiana. Indeed, Kincaid's Indiana transactions lie at the very heart of this action. Kincaid itself contends that problems and defects with the Haldrup implements, specifically the implements sold by Kincaid to Purdue, provide the justification for Kincaid's refusal to make payment to Haldrup for the products sold to Kincaid. Kincaid's non-payment is the subject of Counts I and II of Haldrup's Amended Complaint.

Haldrup alleges that unauthorized alterations and modification of the agricultural implements manufactured and sold by Inotec to Kincaid have resulted in problems for the ultimate purchasers of those implements and that Kincaid's actions have caused and continue to cause damage to Haldrup's reputation among purchasers of such implements in the United States

market.  The evidence presented in this case demonstrates that two such sales where alterations and modifications made by Kincaid to Haldrup's agricultural implements have caused injury to the consumer were the sales of the Haldrup implements to Purdue in West Lafayette, Indiana. Likewise, Kincaid's attempted sale of products to Tech Services in Bluffton, Indiana also directly relates to the claims asserted in Haldrup's Amended Complaint.  Accordingly, there can be no doubt that Kincaid's contacts with Indiana are related to the claims of damage being asserted by Haldrup in this case.  Therefore, Kincaid is subject to personal jurisdiction in Indiana.

### 3.  Kincaid has Failed to Demonstrate that the Exercise of Personal Jurisdiction Over Kincaid Does not Comport with Traditional Notions of Fair Play and Substantial Justice.

Once it has been decided that a defendant purposely established minimum contacts with the forum state, those contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476, 105 S.Ct. 2174, 85 L.E.2d. 528 (1985). Factors to be considered include the burden on the defendant; the forum state's interest in adjudicating the dispute; the plaintiff's interest in obtaining convenient and effective relief; the interstate judicial system's interest in obtaining the most efficient resolution of controversy; and the shared interest of several states in furthering fundamental substantive social policies. *Felland, supra* at 677, quoting *Burger King, supra* at 477.

Where a defendant who purposely has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations will render jurisdiction unreasonable.  *Burger King, supra* at 477; *1*[st] *Source Bank, supra* at 911.  The Seventh Circuit has noted that the factors cited above will rarely justify

a determination against personal jurisdiction because there are other mechanisms available to the court, such as choice of law and transfer of venue, to accommodate various interests at play. *Illinois v. Hemi Group, LLC,* 622 F.3d. 754, 760 (7th Cir. 2010).

In this case, Kincaid has wholly failed to meet its burden to present a compelling case that the presence of the above factors would render jurisdiction unreasonable. Indeed, Kincaid appears to rely only upon the fact that it would be inconvenient for Kincaid to litigate this case in Indiana as a consideration of why the exercise of jurisdiction would offend traditional notions of fair play and substantial justice. However, as the Supreme Court noted in *Burger King*, a defendant claiming substantial inconvenience may seek a change of venue. *Id.* Moreover, inconvenience to the defendant is normally not a dispositive factor given the relative ease with which modern technology and transportation allow a defendant to litigate anywhere in the United States. *Id.* at 474; *O'Neal, supra* at 963.

Moreover, other factors militate against a finding that Kincaid is not subject to personal jurisdiction. States have a significant interest in providing a forum for their residents to seek legal relief for injuries suffered within their territory. *Felland*, *supra* at 677; *1st Source Bank, supra* at 911. Accordingly, Indiana has an interest in the present dispute, as Haldrup is an Indiana resident and has suffered injuries in Indiana as a result of the conduct of Kincaid at issue in this case. Therefore, this factor weighs in favor of exercising personal jurisdiction over Kincaid. Likewise, Haldrup has an interest in obtaining convenient and effective relief. Because Haldrup is a resident of Indiana and has alleged an injury in Indiana, this factor also weighs in favor of exercising jurisdiction over Kincaid. *1st Source Bank, supra.*

Stated simply, Kincaid has failed to meet its burden to show that exercising jurisdiction over it in this matter would offend traditional notions of fair play and substantial justice. Accordingly, Kincaid's Motion to Dismiss should be denied on that basis.

**B.  The Northern District of Indiana Is Proper Venue in this Matter.**

Kincaid argues that this matter should be dismissed because Kincaid is not subject to venue pursuant to 28 U.S.C. §1391.   However, as Kincaid is deemed to be a resident of this District, venue is proper under §1391.

28 U.S.C. §1391(b) provides, in pertinent part:

A civil action may be brought in:

(1)     a judicial district in which any defendant resides; if all defendants are residents of the state in which that district is located;

(2)     a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred or a substantial part of the property that is the subject of the action is situated; or

(3)     if there is no district in which an action may otherwise be brought provided in this section, any judicial district in which a defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. §1391(c) defines residency for purpose of venue.  That statute provides, in pertinent part:

For all venue purposes . . .

(2)     an entity with the capacity to sue or be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question.

Accordingly, under 28 U.S.C. §1391, venue is proper in any judicial district in which any defendant resides, and a corporation such as Kincaid is deemed to reside in any judicial district in which it is subject to the court's personal jurisdiction.  Accordingly, as  Kincaid is subject to

personal jurisdiction in Indiana, venue is proper in the Northern District of Indiana pursuant to 28 U.S.C. §1391. Therefore, Kincaid's Motion to Dismiss should be denied on that basis.

### C. Kincaid has Failed to Demonstrate that this Case Should be Transferred Pursuant to 28 U.S.C. §1404(a).

The federal change of venue statute, 28 U.S.C. §1404, allows a district court to transfer an action filed in a proper, but not necessarily convenient, venue to a more convenient district. *Research Automation, Inc. v. Schrader-Bridgeport International, Inc.*, 626 F.3d. 973, 977 (7th Cir. 2010). 28 U.S.C. §1404(a) provides:

> For the convenience of the parties and witnesses, and in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

Importantly, however, the party moving for transfer carries the burden of establishing, by reference to particular circumstances, that the transferee forum is clearly more convenient. *Coffey v. VanDorn Ironworks*, 796 F.2d. 217, 220 (7th Cir. 1986); *Brotherhood Mutual Ins. Co. v. GuideOne Mutual Ins. Co.*, 2011 WL 1627114, *2 (N.D. Ind. 2011). Where transfer would merely shift inconvenience (and conversely convenience) from one party to another, transfer should not be granted. *K&F Manufacturing Co. v. W. Litho Plate & Supply Co.*, 831 F.Supp. 661, 664 (N.D. Ind. 1993). In this case, Kincaid has wholly failed to meet its burden of establishing that the District of Kansas is clearly more convenient. Accordingly, Kincaid's Motion to Transfer Venue should be denied.

Courts within the Seventh Circuit have consistently held that a plaintiff's choice of forum should rarely be disturbed unless the balance is strongly in favor of the defendant. *Robinson Steel Co., Inc., v. Caterpillar, Inc.*, 211 WL 923415, *6 (N.D. Ind. 2011). Indeed, a plaintiff's chosen forum is entitled to substantial deference, particularly where the chosen forum is the plaintiff's home forum. *Valbruna Stainless, Inc. v. ADT Security Services, Inc.*, 2010 WL

2772324, *2 (N.D. Ind. 2010).   In this case, as Indiana is Haldrup's home forum, its choice of the Northern District of Indiana is entitled to substantial deference.   Kincaid has cited no compelling reason for the Court to deviate from that outcome.

Specifically, Kincaid has wholly failed to demonstrate that transfer to the District of Kansas would serve the consideration of the convenience of witnesses.   Witness convenience is the most important factor in the transfer balance.   *Valbruna Stainless, supra* at *4; *Brotherhood Mutual, supra* at *4.   In determining the convenience of witnesses; the Court may consider the number of witnesses involved, travel distances and associated costs, the willingness of the witnesses to appear, or whether the witness is within the Court's reach to compel appearance. *Valbruna Stainless, supra*.   The party moving for transfer of venue must demonstrate precisely who the witnesses are and why they are important so as to permit the Court to afford the appropriate weight to this factor.   *Saratoga Potato Chips, Inc. v. Classic Foods, Inc.*, 215 WL 1778786, *5 (N.D. Ind. 2015).   Otherwise, this factor may be weighed only marginally, if at all, in favor of the moving party.   *Id.* It is insufficient for the moving party simply to state that a number of witnesses reside in or near the forum to which the party desires to have the case transferred without identifying the witnesses and their proposed testimony.   *Id.*

Kincaid has wholly failed to demonstrate who the witnesses are and what their testimony would be, and why the District of Kansas would be more convenient for those witnesses. Certainly, we know that Mike Mossburg from Bluffton, Indiana will be a non-party witness in this case.   Likewise, representatives of Purdue who allegedly suffered problems with the Haldrup products sold to it by Kincaid will also be non-party witnesses.   Those witnesses are located in the Northern District of Indiana.

In addition, it appears that other witnesses would be located outside both Indiana and Kansas, including in Arkansas and Manitoba. Certainly, the District of Kansas would be no more convenient for those witnesses than would be the Northern District of Indiana. Accordingly, Kincaid has wholly failed to meet its burden of demonstrating the most important transfer factor, that the District of Kansas would be more convenient for the non-party witnesses in this case.

In addition, Kincaid has wholly failed to establish that the public factors related to transfer under §1404 weigh in favor of transfer of this matter to the District of Kansas. These public factors include the Court's familiarity with the applicable law, the speed at which the case will proceed to trial, and the desirability of resolving controversies in their locale. *Saratoga Potato Chips, supra* at *6.

While Kincaid asserts that "it is anticipated that the forum court will be applying Kansas law to the plaintiff's claim" Kincaid wholly fails to cite any authority for the proposition that this case will be governed by Kansas law. Moreover, Kincaid makes no argument that this case will proceed to trial more rapidly in the District of Kansas, or that the District of Kansas is a more desirable forum because that is where the controversy arose. Stated simply, Kincaid has failed to meet its substantial burden to establish that the District of Kansas is clearly more convenient under §1404(a).

Where the balance of convenience is a close call, merely shifting inconvenience from one party to another is not a sufficient basis for transfer. *Research Automation, supra* at 978. In this case, while Kincaid asserts that it would certainly be more convenient for it to litigate this matter in the District of Kansas, it has wholly failed to establish that the District of Kansas is clearly

more convenient for the parties, the non-party witnesses, and the interest of justice. Accordingly, the Motion to Transfer should be denied on that basis.

## III. CONCLUSION

For all the foregoing reasons, Kincaid's Motion to Dismiss Plaintiff's Amended Complaint Or in The Alternative for Venue Transfer should be denied.

Respectfully submitted,

CARSON BOXBERGER LLP

By _____*/s/ Larry L. Barnard*_____
         J. Blake Hike (28601-02)
         Larry L. Barnard (11904-49)
         Attorneys for Plaintiff

301 W. Jefferson Blvd., Suite 200
Fort Wayne, Indiana 46802
Telephone: (260) 423-9411

## CERTIFICATE OF SERVICE

This will certify that on this 26th day of February, 2016, a true and complete copy of the above and foregoing document has been electronically served with the Clerk of Court using the CM/ECF system, which will send notice to the following counsel:

Kathleen Anderson, Esq.
kathleen.anderson@btlaw.com

Sherry McGrath, Esq.
Sherry.mcgrath@btlaw.com

    */s/ Larry L. Barnard*_____